```
                    UNITED STATES DISTRICT COURT

                     DISTRICT OF NEW HAMPSHIRE


Daniel Peter Buccellato,
     Claimant

     v.                                  Case No. 14-cv-335-SM
                                         Opinion No. 2016 DNH 066
Carolyn W. Colvin,
Acting Commissioner,
Social Security Administration,
     Defendant
```

**O R D E R**

Pursuant to 42 U.S.C. § 405(g) and 1383(c)(3), claimant, Daniel Buccellato, moves to reverse the Acting Commissioner's decision denying his application for Disability Insurance Benefits under Title II of the Social Security Act (the "Act"), 42 U.S.C. § 423, and Supplemental Security Income Benefits under Title XVI of the Act, 42 U.S.C. §§ 1381-1383(c). The Acting Commissioner objects and moves for an order affirming her decision.

For the reasons discussed below, the matter is remanded for further proceedings consistent with this order.

**Factual Background**

I.  Procedural History.

In 2011, Buccellato filed an application for Disability Insurance Benefits and Supplemental Security Income Benefits, alleging that he had been unable to work since January 14, 2011, due to multiple surgeries on his right knee with limited mobility and pain, bipolar disorder, ulcers, gout, high blood pressure, high cholesterol and a donated kidney.  Administrative Record ("Admin. Rec.") at 111-112, 200-12, 263.  That application was denied initially and on reconsideration.  Id. at 67-116, 123-36.  Buccellato then requested a hearing before an Administrative Law Judge ("ALJ").  Id. at 137-38.

On June 11, 2013, Buccellato, his attorney, and a vocational expert appeared before an ALJ, who considered claimant's application de novo.  Two weeks later, on June 26, 2013, the ALJ issued his written decision, concluding that Buccellato was not "under a disability," as defined in the Act, from January 14, 2011, through the date of his decision.  Id. at 34.

Buccellato then sought review of the ALJ's decision by the Appeals Council.  Id. at 22.  By notice dated June 16, 2014, the Appeals Council denied Buccellato's request for review.  Id. at 1-4.  Accordingly, the ALJ's denial of Buccellato's application

for benefits became the final decision of the Commissioner, subject to judicial review.  Id. at 1.  Subsequently, Buccellato filed a timely action in this court, asserting that the ALJ's decision is not supported by substantial evidence.  Buccellato then filed a "Motion for Order Reversing Decision of the Commissioner" (document no. 12).  In response, the Acting Commissioner filed a "Motion for Order Affirming the Decision of the Commissioner" (document no. 14).  Those motions are pending.

II.  Stipulated Facts.

Pursuant to this court's Local Rule 9.1, the parties have submitted a statement of stipulated facts which, because it is part of the court's record (document no. 15), need not be recounted in this opinion.  Those facts relevant to the disposition of this matter are discussed as appropriate.

**Standard of Review**

I.  "Substantial Evidence" and Deferential Review.

Pursuant to 42 U.S.C. § 405(g), the court is empowered "to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."  Factual findings and credibility determinations made by the Commissioner are conclusive if

supported by substantial evidence. See 42 U.S.C. §§ 405(g), 1383(c)(3). See also Irlanda Ortiz v. Secretary of Health & Human Services, 955 F.2d 765, 769 (1st Cir. 1991). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938). It is something less than a preponderance of the evidence, so the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence. Consolo v. Federal Maritime Comm'n., 383 U.S. 607, 620 (1966). See also Richardson v. Perales, 402 U.S. 389, 401 (1971).

II. The Parties' Respective Burdens.

An individual seeking SSI and DIB benefits is disabled under the Act if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). See also 42 U.S.C. § 1382c(a)(3). The Act places a heavy initial burden on the claimant to establish the existence of a disabling impairment. See Bowen v. Yuckert, 482 U.S. 137, 146-47 (1987); Santiago v. Secretary of Health & Human Services, 944 F.2d 1, 5

(1st Cir. 1991).  To satisfy that burden, the claimant must prove, by a preponderance of the evidence, that his impairment prevents him from performing his former type of work.  See Gray v. Heckler, 760 F.2d 369, 371 (1st Cir. 1985); Paone v. Schweiker, 530 F. Supp. 808, 810-11 (D. Mass. 1982).  If the claimant demonstrates an inability to perform his previous work, the burden shifts to the Commissioner to show that there are other jobs in the national economy that he can perform, in light of his age, education, and prior work experience.  See Vazquez v. Secretary of Health & Human Services, 683 F.2d 1, 2 (1st Cir. 1982).  See also 20 C.F.R. §§ 404.1512(f) and 416.912(f).

In assessing a disability claim, the Commissioner considers both objective and subjective factors, including: (1) objective medical facts; (2) the claimant's subjective claims of pain and disability, as supported by the testimony of the claimant or other witnesses; and (3) the claimant's educational background, age, and work experience.  See, e.g., Avery v. Secretary of Health & Human Services, 797 F.2d 19, 23 (1st Cir. 1986); Goodermote v. Secretary of Health & Human Services, 690 F.2d 5, 6 (1st Cir. 1982).  Ultimately, a claimant is disabled only if his:

> physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the

5

>    national economy, regardless of whether such work
>    exists in the immediate area in which he lives, or
>    whether a specific job vacancy exists for him, or
>    whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A).  See also 42 U.S.C. § 1382c(a)(3)(B).

With those principles in mind, the court reviews claimant's motion to reverse and the Commissioner's motion to affirm her decision.

### Background - The ALJ's Findings

In concluding that Buccellato was not disabled within the meaning of the Act, the ALJ properly employed the mandatory five-step sequential evaluation process described in 20 C.F.R. §§ 404.1520 and 416.920.  See generally Barnhart v. Thomas, 540 U.S. 20, 24 (2003).  Accordingly, he first determined that Buccellato had not been engaged in substantial gainful employment since the date of his alleged onset of disability: January 14, 2011.  Admin. Rec. at 28.  Next, he concluded that Buccellato suffers from the following severe impairments: "degenerative disc disease of the knees,[1] obesity and polysubstance abuse (20 CFR

---

[1]   Claimant correctly points out that this is an incorrect classification of his knee problems (as there are no "discs" in the knee), and he actually suffers from degenerative joint disease of the knee.  Cl.'s Br. in Supp. of Mot. (document no. 12-1), pp. 4-5.  However, "[i]n the context of social security cases, errors in ALJ decisions have been excused as mere scrivener's errors when the ALJ's intent was apparent."  Hudon v.

404.1520(c) and 416.920(c))." Id. at 28. Nevertheless, the ALJ determined that those impairments, regardless of whether they were considered alone or in combination, did not meet or medically equal one of the impairments listed in Part 404, Subpart P, Appendix 1. Admin. Rec. at 30.

The ALJ also considered claimant's diagnoses of hypertension, gout of the first left metatarsal, GERD, depression and anxiety, and found that those conditions were nonsevere. Id. at 29. With respect to depression and anxiety, the ALJ specifically noted that Buccellato had not sought counseling during the period under review, and that "[such] lack of treatment is very strong evidence that his mental health conditions are not as severe as he alleged," and do not "cause more than minimal limitation in the claimant's ability to perform basic mental work activities." Id. at 29. Buccellato does not challenge any of those findings.

Next, the ALJ concluded that Buccellato retained the residual functional capacity ("RFC") to perform the exertional

---

Astrue, No. 10-CV-405-JL, 2011 WL 4382145, at *4 (D.N.H. Sept. 20, 2011). Here, the record evidence makes clear that the incorrect classification was an inadvertent typographical error by the ALJ. At the hearing, the ALJ stated that he understood that the claimant suffered from degenerative joint disease, and, in his order, he extensively discussed the claimant's history of knee impairment. See Admin. Rec. at 41, 29.

demands of sedentary work.² He noted, however, that Buccellato should avoid all ladders, ropes and scaffolding; cannot perform jobs that involve kneeling, crouching, or crawling; he should avoid all pushing and pulling with the lower extremities; and he can only occasionally stoop. Admin. Rec. at 30. In support of that conclusion, the ALJ considered the testimony of Buccellato at the evidentiary hearing, but determined that the objective medical evidence in the record did not support Buccellato's allegations. The ALJ also considered the medical opinions offered by the state agency medical consultant, Dr. Patricia Pisanelli, who opined that the claimant "could stand or walk for [four] hours, and sit for about [six] hours during an [eight]-hour work day," as well as the October 2012 medical opinion of the claimant's treating physician, Dr. Michael Sparks, who opined that claimant had no work capacity "at the current time, but made clear that his opinion was temporary only." Id. at 32. In light

---

¹ "RFC is what an individual can still do despite his or her functional limitations. RFC is an administrative assessment of the extent to which an individual's medically determinable impairments, including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities. Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis." Social Security Ruling ("SSR"), 96-8p, Policy Interpretation Ruling Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims, 1996 WL 374184 at *2 (July 2, 1996) (citation omitted).

of the aforementioned restrictions, the ALJ concluded that Buccellato was not capable of returning to his prior job. Id. at 33.

Finally, the ALJ considered whether there were any jobs in the national economy that Buccellato might perform. Relying upon the testimony of a vocational expert, the ALJ concluded that, notwithstanding Buccellato's exertional limitations, he "is capable of making a successful adjustment to other work that exists in significant numbers in the national economy." Admin. Rec. at 34. Consequently, the ALJ concluded that Buccellato was not "disabled," as that term is defined in the Act, through the date of his decision.

## Discussion

Buccellato challenges the ALJ's decision on three grounds, asserting that the ALJ erred by: (1) failing to properly assess Buccellato's credibility; (2) failing to properly analyze Buccellato's impairments in the RFC; and (3) ignoring relevant evidence from a treating medical source.

The majority of claimant's arguments lack merit. However, for the reasons set forth herein, the court agrees that the ALJ

failed to properly assess Buccellato's credibility, and remands on that basis.

Buccellato makes two arguments regarding the ALJ's credibility assessment.  First, he argues that the ALJ failed to take into account evidence in claimant's medical record that corroborates claimant's subjective testimony regarding his knee impairment.  Second, he argues that the ALJ erred in his credibility assessment by failing to assess the credibility of Buccellato's statements regarding his depression and anxiety.

Social Security Ruling 96-7p sets out a two-step inquiry that an ALJ must follow when evaluating the veracity of a claimant's sujective complaints.  Otero v. Colvin, No. 14-CV-206-PB, 2015 WL 5089810, at *4 (D.N.H. Aug. 27, 2015) (citing SSR 96-7p, 1996 WL 374186, at *2).  The ALJ must first consider whether the claimant suffers from "an underlying medically determinable physical or mental impairment" that could reasonably be expected to produce his or her symptoms.  Id.  Second, the ALJ must determine whether the claimant's statements about his symptoms are substantiated by objective medical evidence, and, if not, the ALJ must consider other relevant information to weigh the credibility of the claimaint's statements.  Id.

> 1. <u>Knee Impairment</u>

After determining that Buccellato suffers from a medically determinable underlying impairment that could produce his symptoms,[3] the ALJ reviewed the objective medical evidence relating to Buccellato's knee and determined that it did not substantiate his allegations. Admin. Rec. at 31-32. More specifically, the ALJ found that the objective medical evidence "fails to support a finding of total disability and is more consistent with an ability to perform at least a range of sedentary exertion work." Admin. Rec. at 32. The ALJ noted that, contrary to Buccellato's testimony, "the claimant was generally noted to exhibit full strength in his lower extremities, good range of motion normal reflexes and sensation and a normal gait," aside from brief periods following his knee surgeries. Admin. Rec. at 32 (citations omitted). With respect to Buccellato's allegations regarding instability, the ALJ noted that "records consistently indicated that the claimant was able to maintain coordination throughout the majority of the period as

---

[3] As discussed, the ALJ did mischaracterize Buccellato's knee impairment in his order as "degenerative disc disease of the knee." However, Buccellato points to no evidence in the record that supports his argument that this mischaracterization constitutes anything more than a typographical error. Nor does the claimant offer any explanation with respect to how that incorrect classification "over simplifies" his knee problems. Cl.'s Br. in Supp. of Mot., p. 5.

well as full stability in both of his knees." Admin. Rec. at 32 (citations omitted).

Claimant takes issue with that finding, arguing that the "ALJ summarized three surgeries with subsequent strict nonbearing instructions as 'acute injury' and failed to recognize the consistent MRI and CT scans which corroborated Plaintiff's allegations of pain." Cl.'s Br. in Supp. of Mot., p. 7. To be sure, there is medical evidence in the record that supports Buccellato's allegations. However, "'[i]t is the ALJ's prerogative to resolve conflicting evidence, and [the court] must affirm such a determination, even if the record could justify a different conclusion, so long as it is supported by substantial evidence.'" Ellison v. Colvin, No. 14-CV-35-PB, 2015 WL 226027, at *2 (D.N.H. Jan. 16, 2015) (quoting Vazquez-Rosario v. Barnhart, 149 Fed. Appx. 8, 10 (1st Cir. 2005)). And, based on the court's review of the record, there is substantial evidence in the record supporting the ALJ's findings. See, e.g., Admin. Rec. at 324, 373-74, 376, 393, 431, 443, 476, 484, 488, 501-502, 503, 538, 958, 966, 1076-1077, 1121, 1179, 1188, 1192, 1365, 1368, 1374. Accordingly, the ALJ's determination on the issue is entitled to deference.

2. <u>Mental Impairment</u>

However, Buccellato's argument concerning the ALJ's failure to assess the credibility of his statements regarding his depression and anxiety symptoms is more persuasive.

"It is the responsibility of the Secretary to determine issues of credibility and to draw inferences from the record evidence." <u>Ortiz v. Sec'y of Health & Human Servs.</u>, 955 F.2d 765, 769 (1st Cir. 1991). Indeed, in this circuit, the "credibility determination by the ALJ, who observed the claimant, evaluated his demeanor, and considered how that testimony fit in with the rest of the evidence, is entitled to deference, especially when supported by specific findings." <u>Frustaglia v. Sec'y of Health & Human Servs.</u>, 829 F.2d 192, 195 (1st Cir. 1987) (citing <u>DaRosa v. Secretary of Health and Human Services</u>, 803 F.2d 24, 26 (1st Cir. 1986)).

"[A]n ALJ's determination or decision must contain <u>specific reasons</u> for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." <u>Weaver v. Astrue</u>, No. 10-CV-340-SM, 2011 WL 2580766, at *6 (D.N.H. May 25, 2011), <u>rept.</u>

and rec. adopted sub nom. Weaver v. U.S. Soc. Sec. Admin., Comm'r, 2011 WL 2579776 (D.N.H. June 27, 2011) (additional citations omitted) (emphasis in original). "'An ALJ is free to disbelieve a claimant's subjective testimony; however, he or she must make specific findings as to the relevant evidence he considered in determining to disbelieve the claimant,' i.e., by identifying 'what testimony is not credible and what evidence undermines the claimant's complaints.'" Waters v. Colvin, No. 13-CV-45-JL, 2014 WL 898639, at *2 (D.N.H. Mar. 7, 2014) (quoting Kalloch v. Astrue, No. 11-cv-522, 2012 WL 4930986, at *6 (D.N.H. Sept. 18, 2012), rept. & rec. adopted, 2012 WL 4930983 (D.N.H. Oct. 15, 2012)) (internal brackets removed).

At the hearing, in response to a question asking whether he would be able to perform a job where he could be seated for most of the day, Buccellato responded that he would be unable to do so because:

> my depression, the more time I have that I'm sitting still or if I'm not keeping my brain occupied as like watching T.V. or something or if I'm trying to do a task I have a hard time staying on task to finish it. That's why most of all my jobs [prior to the alleged onset date] were manual labor jobs, you know, physical labor, you know, was always something to keep moving, to keep me going and my anxiety just doesn't, I don't like to be in small areas. It doesn't work well with me. I don't, being confined is not something that I'm good with.

14

Admin. Rec. at 57.  The ALJ summarized the testimony in his order, noting that Buccellato stated he would be unable to "perform a seated job . . . due to depression and that his anxiety increases when he is confined."  Admin. Rec. at 31.  The ALJ then stated that "claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms," but that "claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision."  Id. at 31-32.

Following that finding, however, the ALJ did not provide an explanation as to why he was not crediting Buccellato's testimony regarding his inability to perform sedentary work due to the intensity, persistence, and limiting effects of the symptoms of depression and anxiety that he claimed.  Thus, while the ALJ stated that he did not credit Buccellato's testimony regarding the severity of limitations imposed by his (non-severe) depression and anxiety, he "did not identify any specific reasons for that determination."  Weaver, 2011 WL 2580766, at *7.  Indeed, it does not appear from the record that the ALJ conducted an evaluation of the "intensity, persistence and limiting effects" of Buccellato's symptoms arising from his mental impairment "to determine the extent to which the symptoms limit

15

[his] ability to do basic work activities." SSR 96-8P, 1996 WL 374184, at *2 (Jul. 2, 1996). The regulations, however, require that an RFC "consider all . . . medically determinable impairments . . . including your medically determinable impairments that are not 'severe.'" 20 C.F.R. §404.1545; see also 20 C.F.R. § 416.945; SSR 96-8P, 1996 WL 374184, at *5 (Jul. 2, 1996) ("In assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.' While a 'not severe' impairment(s) standing alone may not significantly limit an individual's ability to do basic work activities, it may — when considered with limitations or restrictions due to other impairments — be critical to the outcome of a claim.")

The ALJ did generally note that Buccellato's urine test had indicated marijuana and methadone use, and that "[s]uch evidence of drug abuse tends to reduce the credibility of the claimant's testimony in general." Admin. Rec. at 32. But, assessing Buccellato's credibility generally is not enough to satisfy Social Security Ruling 96-7p's requirements. A greater degree of specificity is required, including a determination as to whether the objective medical evidence supports claimant's testimony, and, if not, "a finding on the credibility of the individual's

statements based on a consideration of the entire case record."
SSR 96-7p, 1996 WL 374186, at *2 (S.S.A. 1996)


The record's lack of explanation for the ALJ's credibility assessment regarding claimant's mental health symptoms is a thorny problem because those purported symptoms directly bear on Buccellato's capability to perform sedentary work.  It may very well be that evidence in the record does substantially support the ALJ's conclusion that Buccellato's testimony regarding the extent to which his symptoms limit his capacity to work is not credible.  However, "the ALJ's analysis falls well short of being sufficiently specific to make clear to [Buccellato] and to this court the weight the ALJ gave to [Buccellato]'s statements and the reasons for that weight."  Kalloch, 2012 WL 4930986, at *9 (quotation omitted) (internal brackets omitted).  The Commissioner's arguments to the contrary notwithstanding, there is little choice here but to remand for the required explanation of the ALJ's credibility determination.


## Conclusion

For the foregoing reasons as well as those set forth in the claimant's legal memorandum, claimant's motion to reverse the decision of the Acting Commissioner (document no. 12) is granted to the extent he seeks a remand for further proceedings.  The

Acting Commissioner's motion to affirm her decision (document no. 14) is denied.

Pursuant to sentence four of 42 U.S.C. § 405(g), the decision of the ALJ dated June 26, 2013, is vacated and this matter is hereby remanded for further proceedings consistent with this order.  The Clerk of Court shall enter judgment in accordance with this order and close the case.

    **SO ORDERED.**

                                            Steven J. McAuliffe
                                            United States District Judge

March 30, 2016

cc:  Laurie S. Young, Esq.
     D. Lance Tillinghast, Esq.
     Robert J. Rabuck, AUSA